Lawrence M. Meadows, Pro Se
1900 Sunset Harbour Dr. #2112
Miami Beach, FL 33139
Phone: 516-982-7718
lawrencemeadows@yahoo.com



FILED BY_____D.C.

FEB 08 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

## IN THE UNITED STATES DISTRICT COURT

## FLORIDA SOUTHERN DISTRICT

| | |
|---|---|
| **LAWRENCE M. MEADOWS,** | **COMPLAINT** |
| Plaintiff, | |
| v. | |
| **AMERICAN AIRLINES, INC.,** | **Case No:** |
| a Delaware Corporation, | |
| Defendant. | **JURY TRAIL DEMANDED** |

**COMES NOW**, the Pro Se Plaintiff, Lawrence M. Meadows, who hereby, files the following Complaint and sues Defendants and states as follows:

## I.  JURISDICTION AND VENUE

1.      Plaintiffs' claims are filed pursuant to 28 U.S.C. § 1331 and § 1343 in that this suit seek to enforce the AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED ("ADA"), 42 U.S.C. § 12101 *et. seq.* an Act of Congress, and law of the United States. Venue is proper under 28 U.S.C. § 1391, as Defendants have substantial contacts in the state of Florida, including a main hub of operations and pilot crew base domicile, and Plaintiff resides in, and has substantial contacts in the state of Florida, and thus subject to personal jurisdiction.

## II.  PARTIES

2. Plaintiff, Lawrence M. Meadows ("Meadows'), resides in, and has substantial contacts in Florida, and is a pilot *"Employee"* of defendant American Airlines, Inc., and a *"Qualified Individual"* as defined under the ADA, 42 U.S.C §12111(4) and (8).

3. Defendant, American Airlines, Inc. (hereinafter, "American", or "Company"), is a foreign corporation with substantial business contacts in Florida, including a main hub of operations, and a pilot crew base domicile, and as an *"Employer"* is a *"Covered Entity"* defined under the ADA, 42 U.S.C §12111(2) and (5).

### III. STATEMENT OF FACTS

4. Plaintiff, Lawrence M. Meadows brings this lawsuit against his Employer, American Airlines, Inc., based the fact that American Airline's ("American") has committed discriminatory and retaliatory acts against him, in violation of his rights under the AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED ("ADA"), 42 U.S.C. § 12101 *et seq.*, which have been on-going , starting before *pre-petition,* continuing through *post-petition* and after the *post-effective* date of confirmation of American's bankruptcy plan.

5. Plaintiff alleges that; 1) Contrary to longstanding past-practice his *"Employer"* American Airlines denied is multiple requests for Return-to-Work ("RTW") medical clearance and return to his original position as line pilot, despite him being a *"Qualified Individual"* who holds current FAA medically certification, who meets all essential job functions as an American Airline Pilot, and treated him disparately on the basis of Discrimination due to his history of medical Disability, in violation of the ADA, and 2) American has also denied same due to Meadows' history of engaging protected activity on behalf of himself and other similarly situated disabled pilots. on basis of Retaliation, in violation of the ADA.

*__Meadows Has A Continuing Employment Relationship With American Airlines__*

6. In 1985, Meadows graduated cum laude from Embry-Riddle Aeronautical University with a B.S. Degree in Aeronautical Engineering. Immediately after graduation, he was commissioned as am Officer in the U.S. Air Force, where he served honorably for almost six years as a military pilot flying T-37, T-38 supersonic training jets, and as C-9A Aeromedical Airlift Aircraft Commander and Instructor Pilot.

7. In October 1991, Meadows was hired by American Airlines as *"Cockpit Crewmember"*, and placed on American's Pilot System Seniority List, as *"Pilot Employe"* and line pilot flying B-727, DC-10, MD-11, and B-777 aircraft.

8. Meadows is, and has always been model employee; 1) he has never had any employee discipline or performance issues, nor any negative entries in his Personal Employment History ("PEH") file, 2) he has never had any flight training deficiencies, nor busted (failed) any simulator or inflight "Check-rides" (pilot evaluations), 3) he has never had any incidents, accidents, nor pilot certificate violations in his Federal Aviation Administration ("FAA") records, 4) he has also volunteered to champion and advocate for disabled pilots, and serves as his Pilots' Union Domicile Long term Disability Coordinator.

9. Ever since American hired Meadows, under the terms of the Pilot Retirement Benefit Program *("Program")* he has been and continues to be a *"Participant"* in that *"Program"* who continuously accrued over 32 years of pension *"Credited Service" (Longevity of Service)* as a *"Pilot Employee"*, with no breaks in service, serving in the status of either Active Pilot, Medical Disability benefits under the American Airlines Pilots' Collective Bargaining Agreement ("CBA"), as is reflected on his recent American Airlines Pension Benefit Statement.

### *Disability History*

10. In September 2011, the Mayo Clinic diagnosed me with a disabling medical condition, based on which the Federal Aviation Administration ("FAA") denied my FAA Airman's Medical Certificate, otherwise required to perform my duties in the cockpit of an American Airlines Aircraft.

11. On December 11, 2011, American's Corporate Medical Director approved Meadows for an Authorized Leave of Absence of Company paid disability benefits under the 2004 American Airlines, Inc. Pilot Long Term Disbailtiy Plan ("LTD" or the "Plan)", as negotiated under the American Airlines Pilots' Collective Bargaining Agreement, Letter KK, ("CBA"), which he has received continuously to date.

12. Under terms of American's collectively bargained Pilot LTD Plan, Meadows is defined and treated as both an *"Employee"* an*d "Pilot Employee",* who is currently paid *"Compensation"* subject to federal tax withholding in the form of *"Employee"* W-2 Wages, and also currently receives *"Active Pilot Employee"* Medical Plan, Dental Plan, Vision, and Life Insurance Benefits, and accrues pilot pension *"Credited Service"*.

### *Meadows Is Now A Fully Qualified Induvial Who Sought Return To Work*

13. Meadows medical disability was finally treated into full remission using FAA approved protocols, and on November 28, 2018, the FAA Federal Air Surgeon approved and issued him an FAA Airman's First Class Medical Certificate, otherwise required to perform his duties in the aircraft as an airline pilot.

14. On December 10, 2018, in accordance with the CBA and longstanding past-practice, Meadows promptly submitted his newly re-issued FAA Airman's First Class Medical Certificate his union, the Allied Pilots Association ("APA"), and requested a Return-To-

Work ("RTW") medical clearance, a training date, and reinstatement to Active Line Pilot status at his original relative seniority.

15. Additionally, on December 24, 2018, the FAA recertified Meadows and issued him new B-777 Captain's Type Rating. Since then, Meadows has continued to remain current and qualified as a B-777 Captain (my former position), and working as B-777 Captain and Instructor Pilot for Boeing and Atlas Airlines Work ("RTW") medical clearance, a training date, and reinstatement to Active Line Pilot status at his original relative seniority.

16. Subsequently, on December 26, 2018, the APA Board of Directors unanimously voted to reinstate Meadows to his original relative seniority position, and on his behalf, the APA President, CA Dan Carey, sent a letter to the Company's Executive Vice President of Flight, CA Kimball Stone, requesting his immediate a Return-To-Work ("RTW") medical clearance, a training date, and reinstatement to Active Line Pilot status at his original relative seniority

17. On January 2, 2019 Meadow sent a second *RTW* request vis certified mailing to American's *ARC*. Once again, the *ARC* responded via email informing Meadows that it would process his RTW request in 1-2 business days, but it never did so.

18. As such, at that juncture he was and has remained a fully "Qualified individual: who meets ALL essential job functions of an American Airlines Pilot, with any accommodations.

***Meadows Has A History of Engaging In Protected Anti-Disability Discrimination Activity***

19. On September 12, 2012, Meadows filed his first EEOC Charge of Disability discrimination, for American's failure to grant him a reasonable accommodation to a non-flying position.

20. On May 14, 2013, Meadows filed a second EEOC Charge of discrimination # 540-2013-01436, because American's pension committee failed to provide a timely response (required

within 90 days) for my second disability benefit claim appeal, originally submitted on August 20, 2012. Further Meadows believed this was in retaliation for filing his first EEOC charge.

21.     Notably, shortly thereafter, American finally granted my award for full retroactive disability benefits, albeit some 300 days after the statutory deadline; thereby, mooting the need to further investigate that charge.

22.      During that same time-frame, for the period of covering January 2009 to August 2015, the EEOC conducted a systemic nationwide investigation into American's pattern and practice od disability discrimination and retaliation, and for engaging in unlawful practices of denying reasonable accommodations and return to work requests in violaiton of the ADA, for which the EEOC ultimately filed a lawsuit, *EEOC v. American Airlines, Inc.*, (D. Ariz., Case No. 2:17-cv-04059).

23.     In November 2017, the above referenced lawsuit was settled by American and the EEOC entering into a Consent Decree with a settlement amount of $9.8M to be paid to all charging parties and potentially aggrieved employees, using American's bankruptcy estate assets, but the Decree notably excluded disabled pilots such as Meadows.

24.     From January 2018 through 2022, Meadows and filed several motions and appeals disputing the exclusion of pilots such as himself from the EEOC Consent Decree and American complained in court pleadings that Meadows Appeal(s) delayed the closing of its bankruptcy proceedings by years.

25.     Ultimately, American's bankruptcy court issued an Order that Meadow and other pilots were party to and must be notified of that EEOC Settlement.

26.     Recently on January 27, 2024, Meadows was issued a letter from the EEOC Settlement Administrator, stating he was identified as a potentially aggrieved disabled employee who

has applied for a reasonable accommodation between 2009-2015, and invited him to participate in the claims process as he may be entitled for monetary compensation for those years he was denied a reasonable accommodation while he was disabled.

27. Notably the EEOC Consent Decree is now effective and Para. 24, explcitly prohibits American from engaging in disability retaliation, stating in relevant part;

> 24. **Defendants, their supervisors, managers, officers, and corporate successors, shall not engage in retaliation of any kind against any person because of such person's opposition to any practice made unlawful under the ADA. Defendants shall not retaliate against a person because such person brings an internal complaint of discrimination covered by the ADA with the Defendants, because such person files or causes to be filed a charge of discrimination with the Commission** or any other agency charged with the investigation of employment discrimination complaints covered by the ADA, or whose statements serve as the basis of a charge, or because such person testifies or participates in the investigation or prosecution of an alleged violation of the ADA, including this investigation, conciliation and litigation. [Emphasis Added].

28. In sum American, has not only retailed against Meadows by denyin his return to work as a qualified formerly disabled individual in violation of the ADA, but also in violation of the EEOC Consent Decree which stems from is systemic pattern and practice of disability discrimination and retaliation.

### *American Treated Meadows Disparately And Denied Requests to Return to his Original Job and Positionas a Qualified Individual Who Meets All Essential Job Functions*

29. Throughout 2019, and to date, Meadows and his union have both since made several follow-up requests in writing to the American requesting his Return-to-Work as a pilot, including a certified letter sent to my Chief Pilot Supervisor dated February 11, 2019, but the Respondent has never responded, nor approved such requests for RTW.

30. Meanwhile, during that same time frame American, on information and belief American granted every other formerly disabled pilots' RTW requests, and Meadows personally spoke to at least five other such pilots, who like Meadows, had been on a disability status for more than 5 years, and in some cases up to 22 years, but were subsequently reinstated.

31. In fact, it was late revealed that on March 6, 2019, APA President, Captain Dan Carey informed the union Board of Directors ("BOD") in its official BOD Meeting Packet that Meadows was the only former disabled pilot out on disability leave for greater than 5 years, "to be denied return to active status from their prior status of MDD ("Medical Disability Dropped from seniority).

32. Given his disparate treatment relative to other similarly situated formerly disabled but since reinstated pilots, Meadows reasonably believed American is discriminating against him on the basis of the nature of his medical disability and also retaliating against him because he previously engaged in protected activity (having filed prior EEOC Charges Of Discrimination and an ADA lawsuit); and continues to improperly regard and treat me as disabled and withholding me from a my job as a Pilot, leaving me I limbo on the American Pilot LTD Plan,, despite me being a fully Qualified Induvial who holds a current FAA medical certification and meets all essential job functions as a Pilot, in violation of the Americans with Disabilities Act of 1990 as amended.

33. Accordingly, on January 15, 2020, Meadows filed an EEOC Charge of Discrimination No. 450-2020-01386 alleging Disability Discrimination and Retaliation.

34. On November 11, 2023, the EEOC issued a Determination to the above reference charge that made no finding as to the merits of any issues that might be construed as having been raised by that charge, and accordingly issued a 90-day NOTICE OF YOUR RIGHT TO SUE, giving rise to this instant and timely filed lawsuit.

### IV. COUNT I: American Engaged In Disability Discrimination in Violation of the ADA

35. Plaintiff incorporates by reference the foregoing paragraphs as fully set forth herein.

36. Meadows is a pilot *"Employee"* of defendant American Airlines, Inc., as defined under the ADA, 42 U.S.C §12111(4), an is American as *"Employer"* and a *"Covered Entity"* under §12111 (2), and (5).

37. Further, American cannot discriminate in providing terms, conditions, benefits and privileges of employment. See *Ralph v. Lucent Technologies, Inc.,* 135 F.3d 166, 171, 7 ADA Case. (BNA) 1345, 1349 (1st Cir.1998).

38. In order to establish a prima facie case of *Disability* discrimination in violation of the ADA, a Plaintiff must prove that (1) he has a *"Disability"*; (2) he is a *"Qualified Individual"*; and (3) he was discriminated against because of his disability. See *Harris v. H & W Contracting Co.,* 102 F.3d 516, 519 (11th Cir.1996). See also, *Witter v. Delta Air Lines, Inc.,* 138 F.3d 1366,1369 (11th Cir . 1998).

39. Meadows suffers from a "Disability", which was verified by the Mayo Clinic, and subsequently acknowledged by American's PBAC, in the award of his second disability claim. Thus, under the ADA Amendments act of 2008 ("ADAAA"), Meadows meets definition of disability, under first prong, for he has impairment that is episodic or in remission is a disability that would substantially limit a major life activity when active. He also meets the second prong, as he has a documented medical record of a *Disability*. Further his Disability, is one of the few actually named in the Regulation.

40. However, Meadows' disabling condition is currently treated into remission with FAA approved protocol, but the ADAAA provides that determination of a *Disability, "shall be made without regard to the ameliorative effects of mitigating measures, such as medication or hearing aids."*

41.    As such, Meadows has been approved for and currently holds the FAA Airman's Medical Certificate otherwise required to perform as duties as an airline pilot, and he his holds FAA Pilot Certificates and type-rating as a current and qualified as a B-777 Captain; and accordingly meets all Essential Job Functions of an American Airlines Pilot.

42.    *"EEOC Enforcement Guidance on the American with Disabilities Act and Psychiatric Disabilities"*, (EEOC Notice Number: 915.02, date 3-25-07), plainly provides that an *"Employer must modify its no-leave policy, and provide additional leave...for treatment or recovery related to a disability."* , and that an, *"Employer must hold open an employee's job* [i.e. pilot seniority number] *if granted leave as a "Reasonable Accommodation"* , and further that, *"Court's recognize leave, as a "Reasonable Accommodation"* .

43.    Based on all the foregoing, there exists *Prima Facie* evidence that American has discriminated against Meadows, and denied his return to work as a pilot on the basis of his *Disability* in violation of the ADA.

44.    Therefore, Meadows respectfully request the Court provide affirmative relief of reinstatement to his relative position on the Pilot System Seniority List and line pilot job that his seniority can hold, and reinstatement of non-revenue travel benefits, and compensatory damages of full back pay and benefits, to include sick, vacation, and pension accruals, punitive damages in the maximum amount of $300,000.00, emotional distress, prejudgment interest, and legal fees and costs, in a total amount to be determined at trial.

### V. COUNT II: American Engaged In Disability Retaliation in Violation of the ADA.

45.    Plaintiff incorporates by reference the foregoing paragraphs as fully set forth herein.

46. Meadows is a pilot *"Employee"* of defendant American Airlines, Inc., as defined under the ADA, 42 U.S.C §12111(4), an is American as *"Employer"* and a *"Covered Entity"* under §12111 (2), and (5).

47. Further, it cannot Retaliate in providing terms, conditions, benefits and privileges of employment, such as non-revenue travel or pension benefits. See *Ralph v. Lucent Technologies, Inc.,* 135 F.3d 166, 171, 7 ADA Case. (BNA) 1345, 1349 (1st Cir.1998).

48. In order to establish a prima facie case of *Disability Retaliation i*n violation of the ADA, a Plaintiff must prove that (1) they engaged in protected activity, (2) their employer took adverse action against them, and (3) the adverse action was causally connected to their protected activity.

49. Here Meadows, (1) plainly engaged in protected activity by filing multiple EEOC Charges of discrimination for failure to provide and reasonable accommodation and ultimately failure to reinstate him as a qualified individual, and litigated to ensure he and other disabled pilots were not excluded form the EEOC Consent Decree Settlement, (2) American took adverse action by treating Meadows return to work request disparately, and (3) that adverse action occurred after, and during Meadows protected activity.

50. Based on all the foregoing, there exists *Prima Facie* evidence that American has discriminated against Meadows, and denied his return to work as a pilot on the basis of his *Disability* in violation of the ADA.

51. Therefore, Meadows respectfully request the Court provide affirmative relief of reinstatement to his relative position on the Pilot System Seniority List and line pilot job that his seniority can hold, and reinstatement of non-revenue travel benefits, and compensatory damages of full back pay and benefits, to include sick, vacation, and pension accruals,

punitive damages in the maximum amount of $300,000.00, emotional distress, prejudgment

interest, and legal fees and costs, in a total amount o be determined at trial

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Lawrence Meadows, prays for a judgment against the

Defendants for the relief as plead herein, and for such other equitable relief as this Honorable

Court deems just and proper.

Dated: this 8th day of February, 2024                    Respectfully submitted,

Lawrence M. Meadows, Pro Se
1900 Sunset Harbour Dr. #2112
Miami Beach, FL 33139
Phone: 516-982-7718
lawrencemeadows@yahoo.com