UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:24-cv-20518-GAYLES/GOODMAN

LAWRENCE M. MEADOWS,

    Plaintiff,

v.

AMERICAN AIRLINES,

    Defendant.
_____/

REPORT AND RECOMMENDATIONS ON DEFENDANT'S
MOTION TO STAY DISCOVERY PENDING RULING
ON MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Courts in our district typically take a "preliminary peek" at the merits of a dispositive motion when evaluating a motion to stay discovery, to see if it appears to be clearly meritorious and truly case dispositive. But the Undersigned has taken more than a preliminary peek. In addition, I held a more-than-one-hour hearing [ECF No. 83] on Defendant American Airlines' ("American") motion to stay discovery concerning Plaintiff Lawrence M. Meadows' ("Meadows") First Amended Complaint [ECF No. 67 ("FAC")], and I also reviewed the response and the reply (to the motion to dismiss) [ECF Nos. 76; 77].

For the reasons outlined below, the Undersigned **respectfully recommends** that United States District Judge Darrin P. Gayles **grant** American's motion [ECF No. 70] and

stay discovery until he issues a ruling on the underlying, substantive motion to dismiss (which will follow a Report and Recommendations on that motion by the Undersigned).

American has asserted five separate grounds to justify its requested with-prejudice dismissal, and any one of which is sufficient to generate an Order dismissing the FAC. The enhanced peek, which could fairly be termed a "lengthy look," demonstrates that the motion appears meritorious and, if granted, would then dispose of the entire lawsuit. In fact, other courts have stayed discovery propounded by Meadows in other, similar lawsuits he filed against American.

Significantly, having reviewed all the briefing on American's motion to dismiss, the Undersigned can safely predict that there is a realistic possibility that I will, in fact, be recommending that Judge Gayles dismiss this lawsuit with prejudice (which means the motion is case-dispositive).

Moreover, Meadows has demanded to immediately take the apex-type depositions of American's CEO and other senior executives, even though he has not had any interactions with them for nearly ten years. Meadows tried to schedule the apex depositions of these senior officials and then scheduled a discovery hearing when American did not provide him with available deposition dates.

A temporary stay of discovery will not unduly prejudice Meadows because the case is in its early stages and because Meadows himself has delayed the prosecution of this case after he filed it. On the other hand, a temporary discovery stay would eliminate

or reduce the burdens and costs of conducting discovery before the case-dispositive motion to dismiss [ECF No. 69] is resolved. At a minimum, there would undoubtedly be additional litigation over Meadows' efforts to take the depositions of senior American executives, including its CEO, without first seeking to use other, less-intrusive discovery tools, such as interrogatories and depositions of other witnesses.

## I. UNDERLYING FACTUAL BACKGROUND

Meadows flew for American as a First Officer from 1991 until he went on a leave of absence due to a medical disability. [ECF No. 67, ¶¶ 8; 11; 15]. Pursuant to the Pilot Collective Bargaining Agreement ("CBA") between American and the Allied Pilots Association, Meadows' employment was terminated and he was removed from the pilot seniority list in 2011 after five years on disability leave. *See, e.g., In re AMR Corp.*, No. 11-15463, 2016 WL 1559294, at *2 (Bankr. S.D.N.Y. Apr. 14, 2016), *subsequently aff'd*, 764 F. App'x 88 (2d Cir. 2019) ("Meadows was ultimately terminated from his employment with American in October 2011."); *Meadows v. Allied Pilots Ass'n*, 822 F. App'x 653, 655 (10th Cir. 2020) ("In 2011, American terminated [Meadows'] employment."); *Meadows v. Am. Airlines, Inc.*, No. 15 CV 3899, 2016 WL 4011231, at *1 (N.D. Ill., July 27, 2016) ("Meadows was . . . eventually terminated."); *Meadows v. AMR Corp.*, 539 B.R. 246, 248 (S.D.N.Y. Oct. 8, 2015) ("In October 2011, Meadows's employment at American was terminated.").

On November 29, 2011, AMR Corp. (the then-parent corporation of American) and its related debtor entities, including its subsidiary American, filed for Chapter 11

3

bankruptcy. *In re AMR Corp.*, 2016 WL 1559294, at *1. On December 9, 2013, the Fourth Amended Joint Chapter 11 Plan (the "Plan") went into effect. *Id.* Section 10.2 of the Plan contains a broad discharge provision, which provides that "all existing Claims against [American] … shall be deemed to be, discharged and terminated[.]" *Id*. (emphasis omitted). The Plan also includes an injunction provision that enjoins anyone who held a claim against American "from [] commencing or continuing in any manner any action or other proceeding of any kind with respect to any such claim[.]" *Id.* at *2.

In direct violation of the Plan's injunction, Meadows "filed a blizzard of new cases" against American after the Bankruptcy Court confirmed the Plan. *Id*. at *3.[1] In ruling on a motion by American to enforce the Plan's injunction against Meadows, the Bankruptcy Court held that Meadows' various actions, including those based on his termination and removal from the pilot seniority list, were "barred" because "all claims arising out of his employment and termination were discharged" in the bankruptcy. *Id.* at *5–6.

---

[1]   In compliance with a Court Order [ECF No. 81], American filed a chart of "all lawsuits, claims, actions and other legal proceedings" filed by Meadows "against American or in which he asserted a claim or legal position concerning his termination." [ECF No. 82]. The list, which did not include the instant case, contained **33** matters, from July 1, 2010 through July 16, 2022. At the September 20, 2024 hearing on the motion to stay, Meadows objected to the list because it included grievances he filed against or before his union. American advised that those matters are properly listed because Meadows "asserted a claim or legal position concerning his termination." But omitting those seven union-related matters still yields **26** litigation matters (over 12 years) concerning his termination as a pilot and his demand to be reinstated at the same seniority level. That is surely enough to constitute a "blizzard" of Meadows-initiated actions.

4

On May 16, 2016, the Bankruptcy Court issued another injunction specifically enjoining Meadows "from seeking any other relief against [American] based on . . . his termination from American and his removal from the pilot seniority list." [ECF No. 67, pp. 153–157]; *see also In re AMR*, 2016 WL 1559294, at *7 ("[T]he relief sought in [Meadows' various legal actions] is the same as that sought pre-petition: reinstatement to the pilot seniority list."). The court issued the injunction in part because "Meadows' litigation has entailed duplicative lawsuits, caused needless expense to [American], and imposed an unnecessary burden on courts across the country." *Id.* at *8.[2]

On November 11, 2023, the EEOC issued a Right to Sue Notice, which gave Meadows 90 days to initiate a lawsuit. [ECF No. 67, ¶ 111]. Meadows waited 89 days, and on February 8, 2024, he initiated this action, asserting two claims under the ADA based on his termination and removal from the pilot seniority list. [ECF No. 1]. Meadows alleges that he is "a pilot '[e]mployee'" of American, and that American discriminated and retaliated against him by engaging in "postpetition conduct, and discrete post-petition acts." [ECF No. 67, ¶¶ 2; 5 (emphasis omitted)]. Meadows seeks "reinstatement to his relative position on the Pilot System Seniority List and line pilot job that his seniority can hold." *Id.* at ¶ 128.

---

[2] According to American's motion to stay discovery, following his termination, Meadows filed three union grievances, five charges with the United States Equal Employment Opportunity Commission ("EEOC"), one charge with the Federal Aviation Administration, five charges with the Department of Labor, three lawsuits in federal court, and appeals to the Second, Ninth, and Tenth Circuit.

5

On May 9, 2024, this Court issued an Order directing Meadows to perfect service on American or show cause why the action should not be dismissed. [ECF No. 12]. On May 10, 2024 -- more than three months after filing his Complaint -- Meadows filed a proof of service. [ECF No. 13].

On June 5, 2024, American moved to dismiss the Complaint. [ECF No. 24]. On June 14, 2024, Meadows filed a motion to extend all outstanding deadlines by 30 days, which the Court granted three days later. [ECF Nos. 28; 29]. Instead of opposing American's motion to dismiss, Meadows chose to amend his Complaint. While he could file the FAC as a matter of right, Meadows instead filed a Motion for Leave to Amend on July 19, attaching his FAC. [ECF No. 35].

On August 2, 2024, American filed a Motion to Dismiss the FAC [ECF No. 47], a step it says it took to err on the side of caution (in the event the Court found the FAC was self-effectuating.).

On August 5, 2024, Meadows filed a Motion to Strike American's Motion to Dismiss the FAC, claiming that it was premature because the Court had not yet granted his request [ECF No. 35] for leave to amend. [ECF No. 50]. On August 12, 2024, following the parties' scheduling conference, the Court granted Meadows' Motion for Leave to File the FAC, giving him until August 23, 2024 to do so. [ECF No. 59]. Meadows did so on the last possible date, August 23. [ECF No. 67].

Despite not filing his FAC until just before the filing deadline expired, Meadows

6

pursued apex depositions of American's most senior leaders, including its CEO. On August 13, 2024, Meadows emailed counsel for American, asserting that he:

> immediately initially want[s] to depose three individuals from American Airlines, to include former CEO Doug Parker, former Chief of Corporate Affairs and current Vice Chair and Strategy Officer, Steve Johnson, and Senior Vice President and Deputy Gen[e]ral Counsel Lucretia Guia.

[ECF No. 70, p. 6].

Meadows further demanded "dates of availability for each of them within the next one to two months." *Id*. Just three days later, Meadows again wrote American's counsel, stating:

> I want to immediately depose Messer's [sic] Parker and Johnson, and Ms. Guia within the next one to two months. Therefore, no later than the close of business next Tuesday, 8/20/24, please provide me with dates of availability for each one of them. Otherwise, I will be compelled to request an in-person hearing on this matter[.]

*Id*.

As the basis for this demand, Meadows stated that: "I have had first-hand contact and meetings with the noticed individuals regarding material facts relevant to my claims." *Id*. On August 20, American responded, explaining that it was "unaware of any interactions between [Meadows] and these senior executives in nearly 10 years – and even those interactions were in passing where [he] approached Mr. Parker and Mr. Johnson at a shareholder meeting several years after [his] termination." *Id*. at 7. Accordingly, American asked that Meadows "provide the dates of those meetings and what was discussed" and that American would consider such information. *Id.*

7

Rather than provide such information, however, on August 21, Meadows sent an email stating that he was attaching deposition notices for Ms. Guia, Mr. Johnson, and instead of Doug Parker (American's former CEO), was also noticing the deposition of Robert Isom (American's current CEO), without any explanation of why he now seeks to depose American's current CEO. Later that day, he sent the deposition notices. On that same day, American responded, reiterating its request that he provide dates of his alleged meetings with these individuals and reiterating that it was unaware of any such interactions other than Meadows approaching Mr. Parker and Mr. Johnson in passing at a shareholder meeting nearly 10 years ago, and several years after his 2011 termination.

Meadows proceeded to send two additional emails on August 22. In an email sent at 11:10 A.M. ET, Meadows -- without providing any factual basis -- stated that, "[t]hese depositions are intended to elicit from the identified witnesses unique knowledge that only they possess" and "deposing lesser officials is not available here because the meetings and decisional process about which I wish to examine them did not involve lesser individuals." Meadows went on to say that, if American refused to accede to his demands to depose American's CEO and some of its most senior executives, then he would "be left with no choice but to subpoena these individuals, and seek court intervention." *Id.* at 7–8.

Before American had a chance to respond, Meadows sent a second email at 12:52 P.M. ET, in which he stated he had contacted Chambers and "requested a 1-hour in-

8

person discovery dispute hearing" and sought American's availability for a hearing "no later than close of business today." American responded shortly thereafter with its availability; again reiterated its request for the third time that he provide dates and what was discussed at the alleged "meetings with the noticed individuals regarding material facts;" and explained its position that "it is premature and improper to schedule a discovery hearing on your demand at this point."

Judge Gayles referred this matter to me pursuant to 28 U.S.C § 636 for a report and recommendations on all dispositive matters. [ECF No. 43].

## II.  SPECIFIC PROCEDURAL HISTORY CONCERNING THIS MOTION

American filed its motion to stay discovery [ECF No. 70] on August 23, 2024, when Meadows filed his FAC, and Meadows issued a notice [ECF No. 71] for a discovery hearing on September 20, 2024. The Undersigned then issued a follow-up Order [ECF No. 72], precluding depositions until the Undersigned has issued a Report and Recommendations ("R&R") on the stay motion (and until Judge Gayles either adopted the R&R or entered another ruling). I also scheduled American's motion to stay discovery as a second topic for the hearing (in addition to Meadows' issues concerning the apex depositions he purported to schedule).

Meadows filed an opposition response and American filed a reply. [ECF Nos. 75; 79]. As noted earlier, the Undersigned also ordered [ECF No. 81] American to submit a list of all lawsuits, claims, actions and other legal proceedings which Meadows filed

9

against American or in which he asserted some type of claim or legal position concerning his termination. The Undersigned heard oral argument on the motion to stay discovery (and Meadows' discovery dispute) on September 20, 2024 in a one-hour, dual-purpose Zoom hearing.

At the hearing, Meadows said he met with Steven J. Johnson, American's chief of corporate affairs, on February 28, 2014, in American's offices for a 15-minute, sit-down meeting. He said he met Johnson again in 2015 and 2018. But he said he spoke to Johnson about his disability benefits, which are not at issue in this lawsuit.

Meadows offered, during the hearing, to limit the three depositions to three hours and to have them over Zoom, rather than in person.

### III.   APPLICABLE LEGAL STANDARDS AND ANALYSIS

The Court "has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *Chrysler Int'l Corp. v. Chemaly*, 280 F.3d 1358, 1360 (11th Cir. 2002) ("At the outset, we stress the broad discretion district courts have in managing their cases."); *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1269 (11th Cir. 2001) ("[W]e accord district courts broad discretion over the management of pre-trial activities, including discovery and scheduling."). Additionally,

"[m]atters pertaining to discovery are committed to the sound discretion of the district court." *Patterson v. United States Postal Serv.*, 901 F.2d 927, 929 (11th Cir. 1990).

"To prevail on a motion to stay, [a] [d]efendant[] must demonstrate reasonableness and good cause." *Chevaldina v. Katz*, No. 17-22225, 2017 WL 6372620, at *2 (S.D. Fla. Aug. 28, 2017). Good cause "exists when the resolution of a preliminary motion may dispose of the entire action." *Pierce v. State Farm Mut. Auto. Ins. Co.*, No. 14-22691, 2014 WL 12528362, at *1 (S.D. Fla. Dec. 10, 2014) (citing *Nankivil v. Lockheed Martin Corp.*, 216 F.R.D. 689, 692 (M.D. Fla. 2003), *aff'd,* 87 F App'x 713 (11th Cir. 2003)).

Thus, in determining whether to enter a stay, "courts generally take a 'preliminary peek at the merits of [the] dispositive motion to see if it appears to be clearly meritorious and truly case dispositive.'" *Chevaldina*, 2017 WL 6372620, at *2 (quoting *Feldman v. Flood*, 176 F.R.D. 651, 652–53 (M.D. Fla. 1997)).

"The Eleventh Circuit recently expressed its concern regarding the burdens and costs of conducting discovery before potentially dispositive motions are resolved." *Dry Tech 24/7, Inc. v. Clorox Co.*, No. 22-61291, 2022 WL 20834472, at *1 (S.D. Fla. Dec. 2, 2022) (granting a motion to stay discovery) (citing *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1308 (11th Cir. 2020)); *see also In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. 21-MD-02994, 2021 WL 10428229, at *3 (S.D. Fla. Oct. 9, 2021) (granting motion to stay discovery and explaining that "legal deficiencies asserted in [a] [m]otion to [d]ismiss [] support the entry of a temporary stay").

Thus, "courts within the Eleventh Circuit[] routinely find good cause to stay the discovery period where there is a pending motion to dismiss." *Tucker v. Ours*, No. 2:15-cv-97, 2015 WL 5971588, at *3 (S.D. Ga. Oct. 14, 2015) (granting motion to stay discovery and noting that a ruling on the motion to dismiss "before the commencement of discovery may save the parties time and resources"); *Berry v. Canady*, No. 2:09-cv-765, 2011 WL 806230, at *1 (M.D. Fla. Mar. 2, 2011) (quoting *Moore v. Potter*, 141 F. App'x 803, 807 (11th Cir. 2005)) ("[N]either the parties nor the court have any need for discovery before the court rules on the motion [to dismiss].").

This is particularly true "when faced with legitimate jurisdictional [] challenges like those present in [American's] Motion to Dismiss"—"discovery should not commence until such challenges are resolved." *In re Mednax Servs.*, 2021 WL 10428229, at *3; *see also Gillier v. Servicios Agecom, LLC*, No. 17-23155, 2017 WL 6994217, at *1 (S.D. Fla. Nov. 27, 2017) (entering stay of discovery given "strong likelihood" that motion to dismiss based in part on lack of jurisdiction would be granted, in which case "proceeding in this forum . . . would be improper"); *McCullough v. Royal Caribbean Cruises, Ltd.*, No. 16-cv-20194, 2017 WL 6372619, at *1 (S.D. Fla. Jan. 11, 2017) (staying discovery given defendants' motion to dismiss for lack of jurisdiction); *Latell v. Triano*, No. 2:13-cv-565, 2014 WL 5822663, at *2 (M.D. Fla. Feb. 28, 2014) (granting discovery stay due to pending motions challenging "personal jurisdiction, standing, and the legal sufficiency of the amended complaint").

Given the possibility[3] that the Undersigned will be recommending that this lawsuit be dismissed with prejudice (as the motion appears meritorious), "we agree that Defendant[] should not be required to suffer monetary burdens or expenses when it appears that Plaintiff's claims may fail for several reasons as a matter of law." *Chevaldina*, 2017 WL 6372629, at *3.

By way of summary, American's arguments are compelling. As our appellate court has explained, courts should stay actions when it appears that a dispositive motion may dispose of an entire case and preserve resources for all parties and the Court:

> If the district court dismisses a nonmeritorious claim before discovery has begun, unnecessary costs to the litigants and to the court system can be avoided. Conversely, delaying ruling on a motion to dismiss such a claim until after the parties complete discovery encourages abusive discovery and, if the court ultimately dismisses the claim, imposes unnecessary costs. For these reasons, any legally unsupported claim that would unduly enlarge the scope of discovery should be eliminated before the discovery stage, if possible. Allowing a case to proceed through the pretrial processes with an invalid claim that increases the costs of the case does nothing but waste the resources of the litigants in the action before the court, delay resolution of disputes between other litigants, squander scarce judicial resources, and damage the integrity and the public's perception of the federal judicial system.

*Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1368 (11th Cir. 1997) (footnotes

---

[3] The Undersigned has not yet finally decided the motion to dismiss, so it is still conceivable that my final ruling will not be a dismissal recommendation. As noted, the "preliminary peek" has been expanded here and my review has been comparatively comprehensive.

omitted).[4]

As noted, American has asserted five separate grounds to dismiss this lawsuit, and all appear to have substantial merit. Therefore, it is appropriate to stay discovery, especially the apex depositions, until the Court has ruled on the dismissal motion.

## IV. CONCLUSION

The Undersigned **respectfully recommends** that Judge Gayles **grant** American's motion and **stay** discovery until he rules on the motion to dismiss (after reviewing the to-be-issued R&R).

## V. OBJECTIONS

The parties will have fourteen (14) days from the date of being served with a copy of this R&R within which to file written objections, if any, with United States District Judge Darrin P. Gayles. Each party may file a response to the other party's objection

---

[4] Meadows cites *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997) for the proposition that motions to stay discovery "are not favored because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." And he cites *Wilshire Ins. Co. v. Crestview Towers Condo. Ass'n, Inc.*, No. 21-23214, 2023 WL 7129941, at *8 (S.D. Fla. Mar. 8, 2023) for the rule that the movant must demonstrate "a specific showing of prejudice or burdensomeness" to obtain a discovery stay. But courts in our district often grant motions to stay discovery, as evidenced by the ample case law authority cited above.

And in *Wilshire*, the Court determined, after taking a preliminary peek at the dismissal motion, that there was no suggestion that the motion would in fact be entirely dispositive. As outlined above, however, the Undersigned reaches a different conclusion here. Moreover, American has demonstrated the undue burden by focusing on the apex depositions which are Meadows' very *first* discovery request.

within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 36(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers at Miami, Florida, on September 23, 2024.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Darrin P. Gayles
All Counsel of Record